IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:21-CR-075 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| RAEKWON MALIK PATTON, | ) | MEMORANDUM |
| also known as, "KWON", | ) | |
| also known as, "NUTT", | ) | |
| | ) | |
| Defendant. | ) | |

# Table of Contents

INTRODUCTION ................................................................................................... 1

ADVISORY GUIDELINES RANGE ................................................................... 2
   *1. Factual Issues* ................................................................................................ 2
   *2. Guideline Issue* ............................................................................................. 3
      a.  USSG §2A2.1(a)(1) was appropriately applied…………………………..4
      b.  Defendant has not met his burden for acceptance of responsibility………..6

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 331 MONTHS' PRISON... 7

CONCLUSION..................................................................................................... 11

## INTRODUCTION

Defendant, an armed gang member, committed a series of shootings. These shootings involved aggravating circumstances that greatly endangered the public. Defendant also dealt drugs and bought and sold firearms via social media. His criminal history, combined with the circumstances of the instant offenses, demonstrate he is dangerous and presents a high likelihood of recidivism. The Court should impose a sentence of 331 months' imprisonment.

1

## ADVISORY GUIDELINES RANGE

The government agrees with the advisory guidelines range contained in the PSR, which is calculated as follows:

<u>Base offense level (§2A2.1(a)(1) (Counts 4 & 6)</u>     33
Total offense level                                      33

Criminal History                                         IV

Guidelines range:     188 to 235 months' imprisonment + 120 months', consecutive = 308 to 355 months' imprisonment

Defendant has multiple unresolved factual and guideline issues, which are further addressed below.

1. *Factual Issues*

Defendant raised several factual issues to the information contained in the offense conduct section of the PSR. *See generally* Dkt No. 439 at ¶¶ 1a-1g. Defendant's factual objections largely center around arguments he made at trial, namely: the connection between OTB and Heavy Hittas, whether OTB was a gang, whether Defendant was a member or associate of OTB, what occurred at the Merle Hay Mall, the order of the shots fired on Clark Street, and events following the May 10, 2020, shooting on Clark Street. Based on the trial record, the Court should overrule each of Defendant's objections on these issues.

Regarding Defendant's objections about Shafer providing direction to follow the Sonata, this is also supported, in part, by the trial record. However, it is further supported by the unredacted version of Austin Mallory's post-*Miranda* interview with law enforcement, attached here for reference. As noted in that transcript, Mallory

repeatedly describes how both Shafer *and* Defendant directed him to follow the Sonata. *E.g.*, Sentencing GX1 at 41 (stating they saw a car at the Merle Hay Mall); 44 (stating they said to go straight); 45-46 (noting that they—in backseat—told him to follow it); 48 (stating they told him to go straight); 53 (noting that they were yelling to follow the car); 54-55 (stating that the people in the backseat were yelling to go, go); 60-61 (admitting that those in the backseat were yelling to follow that car); 86 (noting that they said the Sonata turned); 88 (stating that both of them in the backseat were talking loud); 91 (stating that Shafer instructed him to follow the car); 93 (that there were two people talking loud in the backseat); 98 (nothing that the people in the backseat told him [Mallory] to follow the Sonata). Although the government was prohibited from introducing Mallory's statements regarding Defendant at trial, it is not so limited at sentencing. *United States v. Pepper*, 747 F.3d 520, 524 (8th Cir. 2014) (noting that the sentencing Court may consider all reliable and relevant information, and is not bound by the rules of evidence). Mallory's statements, in addition to the trial evidence, prove that both Defendant and Shafer repeatedly directed Mallory to follow the Sonata.

Each of Defendant's factual objections should be overruled.

2. *Guideline Issues*

Defendant also objected to two guideline applications—whether the attempted first degree murder base offense level was appropriately applied, and whether Defendant is entitled to a reduction for acceptance of responsibility. For the reasons that follow, the Court should overrule Defendant's objections on each issue.

3

### a. USSG §2A2.1(a)(1) was appropriately applied

The guideline for a violation of 18 U.S.C. § 1959 can be found in USSG §2E1.3. That section directs that the base offense level is either a 12 or "the offense level applicable to the underlying crime or racketeering activity." USSG §2E1.3(a). Application Note 1 further instructs that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." USSG §2E1.3, comment. (n.1).

As charged in the Indictment, and found by the jury, the underlying crime in Count 4 was Attempted Murder. Thus, USSG §2A2.1 applies. That section notes that a base offense level of 33 applies "if the object of the offense would have constituted first degree murder; or (2) 27 otherwise." USSG §2A2.1(a). Application Note 1 defines "first degree murder" as that found in 18 U.S.C. § 1111. For the reasons that follow, because the object of the offense here was first-degree attempted murder, a base offense level of 33 applies.

Pursuant to 18 U.S.C. § 1111(a), "[m]urder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). "A defendant acts with malice aforethought if he acts with specific intent to kill—the intention of 'tak[ing] the life of a human being'—or acts 'in callous and wanton disregard of the consequences to human life.'" *United States v. Conley*, (8th Cir. July 28, 2022) (per curiam) (citing and quoting to *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021)). An attempted murder case requires, for malice aforethought, a specific intent to kill

4

versus only a callous and wanton disregard of the consequences to human life. *Braxton v. United States*, 500 U.S. 344 (1991).

Here, the jury convicted Defendant of Attempted Murder in Aid of Racketeering. The underlying offense of attempted murder required a specific intent to kill. Dkt. No. 372 at 29-31. Thus, the attempted murder guideline applies, and the only argument seems to be whether the conduct rose to first or second-degree murder. The evidence demonstrates that first degree attempted murder is the proper application.

As outlined in 18 U.S.C. § 1111(a), in order to be first degree murder, the conduct has to fit into one of the specifically identified categories. Those include "lying in wait, or any other kind of willful, deliberate, malicious, and premediated killing . . . ." 18 U.S.C. § 1111(a). The conduct here supports the "any other kind of willful, deliberate, malicious, and premediated killing" category.

Premeditation, as defined in the Eighth Circuit's Model Instruction Number 6.18.1111A-2, is a killing that is "intentional and the result of planning or deliberation." The Model Instruction further notes that "[t]he amount of time needed for premeditation of a killing depends on the person and the circumstances." However, "[i]t must be long enough for the defendant, after forming the intent to kill, to be fully conscious of his intent, and to have thought about the killing." Eighth Circuit Model Instruction No. 6.18.111A-2.

Here, there was clear premeditation to commit the underlying murder offense. Defendant carried a gun to the Merle Hay Mall on May 10, 2020. He traveled there

with fellow gang members. When the group saw a rival gang member, they (Shafer, Mallory, Defendant, and two others) got into Mallory's Trailblazer, and Mallory stalked that rival gang member through the streets of Des Moines at the direction of Defendant and Mallory. Throughout the pursuit, Defendant and Shafer continued yelling directions at Mallory designed to ensure Mallory didn't lose the other car. That chase was long enough for Defendant to be fully conscious of his intent to kill. When the opportunity presented itself on Clark Street, Defendant fired his loaded gun at his targets until it was empty, with at least some of those shots fired after Defendant had positioned himself outside the Trailblazer's window. This is hallmark premeditation. A base offense level of 33 applies.

### b. Defendant has not met his burden for acceptance of responsibility

Defendant contends he should receive a reduction for acceptance of responsibility. Dkt. No. 439 at ¶ 3. He should not. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG §3E1.1, comment. (n.2). Defendant denied every element at trial. He was convicted. And, to date, he has maintained his innocence.

Defendant's case is not the unique case contemplated by the guidelines where a Defendant goes to trial and may still receive acceptance. *See id.* (noting "rare situations" where a defendant who goes to trial may also receive acceptance). He didn't go to trial to preserve a constitutional challenge to a statute. *Id.* There have been no extraordinary acts of acceptance after trial. Defendant, instead, went to trial

to factually challenge the government's evidence as failing to meet its burden under the law. He continues to maintain his innocence today. While Defendant is constitutionally guaranteed a right to a trial, he is not similarly guaranteed a right to acceptance of responsibility. He has not met his burden for the reduction, and the Court should overrule his objection.

### THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 331 MONTHS' PRISON

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). For the reasons that follow, the § 3553(a) factors support a sentence of 331 months' imprisonment, which is the middle of the guideline range in this case.

The Court is extremely familiar with the facts of this case, having sentenced three co-defendants in this case, not to mention presiding over a two-week trial involving Defendant, Mallory, and Green. Some facts, however, bear repeating.

Defendant is an admitted gang member responsible for multiple shootings. During the May 10, 2020, shooting for which Defendant was tried and convicted, he directed Mallory to hunt down a rival gang member so that Defendant could shoot at him. He did this in a residential neighborhood, in the middle of the afternoon, on Mother's Day. The bullets fired during this incident struck vehicles and houses belonging to innocent people. Miraculously, the only person hit by a bullet in this incident was Defendant's fellow gang member, Shafer.

Although this was the only attempted murder for which Defendant was charged in this case, the evidence presented at trial demonstrated Defendant's involvement in other gang-related shootings. This included the shooting at rival gang member Monte Clay, as well as the shooting of rival gang member Karyree Henderson. These additional shootings were not taken into account by the guideline calculation in this case (other than the criminal history points Defendant received for his state of Iowa conviction underlying the Monte Clay shooting).

Defendant's conduct in this case shows a reckless disregard for the safety of the community. His behavior put others at risk, including innocent people. Defendant conduct, however, wasn't limited to shootings. The evidence at trial demonstrated that Defendant also actively distributed drugs, as well as bought and

sold numerous guns via social media. His criminal conduct was dangerous on multiple levels.

Defendant's criminal history also demonstrates a history of violent behavior and gun possession. At age 16, Defendant sustained his first court adjudication. PSR ¶ 48. That case involved Defendant possessing a loaded .22 caliber handgun in his right front pocket. *Id.* While under consent decree, he committed a new law violation. *Id.* Just over a month after his consent decree for carrying a loaded .22 caliber handgun, Defendant and two others robbed an individual at gunpoint for five pairs of shoes and $40. PSR ¶ 49. Defendant and another individual set up the robbery. *Id.* Although he initially received a ten-year sentence, his sentence was reconsidered after about a year, and he was given probation. *Id.*

While serving that term of probation, Defendant associated with people engaged in criminal activity, and committed another crime. *Id.* Specifically, just over four months after his sentence was reconsidered (and he received probation), Defendant and several other gang members entered a residence armed with several handguns. PSR ¶ 50. Defendant again was shown leniency by the state court, and was again sentenced to probation. *Id.* Less than a year into this term of probation, Defendant was involved in a fight on school grounds. PSR ¶ 51. During the fight, he threw punches and also swung a barstool. *Id.* His probation was not revoked, and he went on to commit the shooting at Monte Clay (PSR ¶ 52) and the May 10, 2020, shooting involved in the federal case while still serving that term of probation.

Defendant's criminal history supports the recommended sentence for several reasons. First, Defendant is firmly committed to not just criminal activity, but violent criminal activity. He repeatedly commits extremely dangerous crimes that involve direct personal risk to others. These crimes often involve not just Defendant's possession of firearms, but the use of those firearms during the offenses. Second, past judicial leniency has not deterred Defendant's violent criminal behavior. He committed multiple violent offenses (including the federal offenses we are here for today) while under state terms of supervision. He also dealt drugs, and possessed multiple firearms. Third, Defendant presents a very high likelihood of recidivism and, due to the types of crimes he commits, this presents a grave danger to the community. All of these things, combined, are just one more factor warranting a significant sentence in this case.

Defendant's repeated involvement in violence, gang activity, and his criminal history creates a danger to the community. A sentence of 331 months' prison achieves the goals of sentencing.

## CONCLUSION

The Court should impose a sentence of 331 months' imprisonment.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By: */s/ Kristin M. Herrera*
Kristin M. Herrera
Ryan W. Leemkuil
Assistant United States Attorneys
Alexa K. Perez
Special Assistant United States Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: kristin.herrera@usdoj.gov
Email: ryan.leemkuil@usdoj.gov
Email: alexa.perez@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August 12, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail  \_\_\_\_ Fax  \_\_\_\_ Hand Delivery

 X  ECF/Electronic filing  \_\_ Other means (email)

UNITED STATES ATTORNEY
By:   */s/Kristin M. Herrera, AUSA*