IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal  Number 4:21-cr-00075 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| RAEKWON MALIK PATTON, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Raekwon Malik Patton, Defendant in the above-captioned  case, by and
through counsel, and submits the following Sentencing Memorandum to the Court:

## I. TABLE OF CONTENTS

II. TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Sentencing Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Other Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ISSUES AT SENTENCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B. Guidelines Calculations and Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C. Evidence at Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    A. Acceptance of Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B. Base Offense Level . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C. Determination of Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        i. the nature and circumstances of the offense and the history and characteristics of
          the defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        ii. the need for the sentence imposed to reflect the seriousness of the offense, to
          promote respect for the law, and to provide just punishment for the offense;
          to afford adequate deterrence to criminal conduct; to protect the public from
          further crimes of the defendant; and to provide the defendant with needed
          educational or vocational training, medical care, or other correctional
          treatment in the most effective manner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        iii. the kinds of sentences available. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv. the kinds of sentence and the sentencing range established the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
v. any pertinent policy statement issued by the Sentencing Commission . . . . . . 13
vi. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . . . . . . . . . . . . 15
vii. the need to provide restitution to any victims of the offense . . . . . . . . . . . . 23

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## II. TABLE OF AUTHORITIES

*Statutes*

18 U.S.C. § 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act. Pub. L. No. 108-21, 117 Stat. 650 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sentencing Guidelines*

USSG § 2A2.1(a)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

USSG § 2A2.2, application note 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

USSG § 3E1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG § 3E1.1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

USSG § 3E1.1, application note 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

USSG § 3E1.1, application note 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

USSG § 3E1.1, comment (backg'd) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG § 3E1.1, comment (backg'd) (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG § 3E1.1, comment, (n. 2, 3) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG § 3G1.3(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG § 3G1.3(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG § 5G1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG § 5K2.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG, App. C, amendment 351 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG, App. C, amendment 459 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG, App. C, amendment 649 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cases*

*Missouri v. Frye*, 566 U.S. 134 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Chapman,* 356 F.3d 843 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Jimenez-Perez*, 659 F.3d 704 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Other Authority*

2021 Annual Report and Sourcebook of Federal Sentencing Statistics . . . . . . . . . . . . . . . . . . . 15

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2019 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2020 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2018 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Don Hummer (2020): *United States Bureau of Prisons' Response to the COVID-19 Pandemic*, Victims & Offenders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hindelang, Criminal Justice Research Ctr., Univ. at Albany, *Sourcebook of Criminal Justice Statistics Online,* tbl.5.22.2010 (Kathleen Maguire ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

O. D. Sanderford, *The Feeney Amendment, United States v. Booker, and New Opportunities for the Courts and Congress*, 83 N.C. L. Rev. 736 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It,* National Association of Criminal Defense Lawyers (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### III. ISSUES AT SENTENCING

*A. Procedural Background.* On May 10, 2020, a twenty count trial information was filed in the Iowa District Court for Polk County, charging Raekwon Malik Patton and others with a number of offenses. Mr. Patton was charged with Criminal Gang Participation, count 1; Conspiracy to Commit a Forcible Felony, count 8; Attempt to Commit Murder, count 9; Going Armed with Intent, count 10; Possession of a Firearm as a Felon, count 11; and Intimidation with a Dangerous Weapon, count 20. All of the charges except count 20 involved the May 10, 2020 incident which was the subject of the counts of conviction in this case.

On December 2, 2020, 2020 a plea agreement was reached and Mr. Patton plead guilty to the charge of Conspiracy to Commit a Forcible Felony in count 8 and Intimidation with a Dangerous Weapon in count 20. He was sentenced to twenty years imprisonment with the Iowa Department of Corrections. His tentative discharge date is June 12, 2029.

His sentencing was held on the same date as the plea. The State prosecutor, Joe Crisp, told the court the following:

> I've not had the opportunity to speak with Ms. Taylor in further detail in regards to Mr. Patton in several weeks, but what I would state is I was a prosecutor assigned to FECR305903 for which he is currently on probation for carrying weapons, and I believe I was on the other case that was associated with that case at the time of his sentencing back in 2018.[1]
>
> I would note from my memory that we're talking about someone who is fairly

---

[1] Karen Taylor was Mr. Patton's attorney for the state case.

articulate, sociable, a good young man, and when you see him in court, when you see him out in the community, it appears that that person is different, in my opinion, from a person that we see in these police reports and the Trial Information and the Minutes of Testimony that all ultimately play a role in preparing and putting in front of a Court and going forward with the criminal matter.

What we need to work with Mr. Patton to figure out is how can we get you to be the person that we see when he is not around peers, and I mean peers by individuals who are his age. Because clearly I understand from relationships that we're going to be different because relationships are different. We may act a little different. But one thing that shouldn't change, Your Honor, is the level of respect, care, and love that we have for one another, no matter who the audience is, and this young man needs to figure that out and figure that out quickly, because if he doesn't, Mr. Patton's very lucky to be here.

He fired some shots, Your Honor, as stated in our Trial Information, that officers saw him firing outside of the Chevy Trailblazer on one occasion. However, there was at least ten shots that were fired back at that vehicle as well, and the person sitting next to Mr. Patton was shot in the head.

So this is behavior that we have to change, and I say we because we're all part of the same community, and it needs to be changed quickly, and this plea agreement, I think, acknowledges that, but also acknowledges at the time of the arrest of his vehicle on May 10 – I apologize, Ruby is in the background. But, Your Honor, if you look at his interview, he was honest with officers to a certain extent.

After being pressed and pressed, he finally came out and basically not only admitted to this crime, but also put himself where he played a role in other crimes and he took, in a roundabout way, the responsibility for his actions. And that's why we're asking for a joint recommendation of 20 years, no mandatory minimum, as opposed to including enhancements or more cases which may expose him to more time. And by doing that we're acknowledging that after, you know, within hours of shooting at a vehicle and other people, he was faced with officers and after being pressed again, he was honest, and I would like for the Court to give him the benefit of that fact by accepting our plea agreement and dismissing the remaining counts of the Trial Information along with the sentencing enhancements, but we all know, particularly Mr. Patton, that we have work to do.

We have a lot of work to do because I know Ms. Taylor – because she's talked to me about it, I believe, in October – that it's shocking when she would meet with Mr. Patton and speak with him, and then you go back to, you know, preparing

your case and doing your case work and you read these things that he's alleged to
have done and has admitted to doing so.

Again, going back to my original statements, we need to get him to be that person
that you'll see, I guarantee you, when he talks to you, because I've seen it before.
The person that he acts when he's in front of myself or Ms. Taylor or I believe
probably other people in the community. We need that person to be there all the
time.

And with that, Your Honor, I would ask for you to adopt our joint
recommendation, and it's our position that we want to see changes in Mr. Patton's
life.

Transcript of Sentencing, *State v. Patton*, ## FECR338165; FECR305903, December 2, 2020,

pages 6-9. (Attached as Exhibit A).

On May 19, 2021 this case was filed in the Southern District. A total of fifteen counts

were filed against six defendants. Mr. Patton was charged with Attempted Murder in Aid of

Racketeering, in violation of 18 U.S.C. § 1959(1)(5); Use, Carry and Discharge of a Firearm

During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and

Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[2] On February

3, 2022, Mr. Patton plead guilty to the Felon in Possession of a Firearm charge.

Trial by jury began on April 4, 2022. On April 14, 2022, Mr. Patton was found guilty of

the Attempted Murder in Aid of Racketeering and Use, Carry and Discharge of a Firearm During

and in Relation to a Crime of Violence.

*B. Guidelines Calculations and Issues*. The presentence report in this matter calculates a

total offense level of 33 and a criminal history category of IV. This leads to a guideline range of

188-235 months. The § 924(c) count requires a ten year term of imprisonment be imposed

---

[2]In the indictment, the charges are counts 4, 5 and 6. At trial the Attempted Murder in Aid
of Racketeering was designated count 1 and the § 924(c) charge was count 2.

consecutively to any other term of imprisonment.

Mr. Patton has made certain factual objections to the report. As noted in the objections, the Court did hear all of the evidence at trial and is in the best position to determine the facts from that evidence. Defendant's position is that the facts as shown at trial are sufficient to show the particular factual objections made to the report.

Defendant has objected that no finding of acceptance of responsibility has been made, and that a two point reduction is appropriate under USSG § 3E1.1. He has objected that the base offense level in this matter is incorrectly calculated as the report finds under USSG § 2A2.1(a)(1) that the offense would have constituted first degree murder. Finally, he has objected that there are no factors which would warrant a departure to the applicable guideline range and suggests that USSG § 5K2.10 is applicable.

*C. Evidence at Hearing.* Defendant does not anticipate the presentation of evidence at sentencing beyond the submissions filed with this memorandum. Letters of support have also been filed.

## IV. ARGUMENT

*A. Acceptance of Responsibility.* The guidelines provide for a two level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). The application notes also provide:

> 1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct

beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

(B) voluntary termination or withdrawal from criminal conduct or associations;

(C) voluntary payment of restitution prior to adjudication of guilt;

(D) voluntary surrender to authorities promptly after commission of the offense;

(E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F) voluntary resignation from the office or position held during the commission of the offense;

(G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2. This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1, application notes 1 and 2.

In this case, Mr. Patton did plead guilty to resolve the state charges filed against him

concerning the same factual incident. He accepted a twenty year prison sentence in that case for his conduct. He admitted what he had done the night of the incident to police. He plead guilty to the felon in possession of a firearm count in this case.

Mr. Patton never disputed his actions on the afternoon of May 10, 2020. He has admitted that he fired the weapon from the car. He also has always maintained that he was firing back at the person that was shooting at the vehicle. Having heard all of the evidence in this matter, that is certainly consistent with the physical and other evidence. Whether the person shooting at him was Mr. Nelson or not was not within his personal knowledge.

The second question at trial had to do with the way the VICAR count was charged. As charged, Mr. Patton had to commit the crime to maintain or increase his position within OTB. His concern was that he was mischarged because he was a member of another group. It was never alleged that he acted to maintain or increase his position in that group rather than OTB. This is an important, if technical, distinction.

However, evaluation of the other considerations in application note 1 does show that acceptance is appropriate in this case. He did admit to the conduct quickly. He has plead guilty and accepted punishment in the Iowa forum. This is not a case where he has only admitted guilt and expresses remorse after trial. He did not  "[hold] the government to its burden and did not admit his guilt in any way to his family, his friends, his church, or the authorities. Cf., *United States v. Chapman,* 356 F.3d 843, 848 (8th Cir. 2004). A two point reduction is appropriate.

*B. Base Offense Level.* Paragraph 38 of the report finds that the base offense level is 33. This is based on a finding that the object of the offense would have constituted first degree murder. PSIR,¶ 38; The guideline provides:

§ 2A2.1. Assault With Intent To Commit Murder; Attempted Murder

(a) Base Offense Level:

(1) 33, if the object of the offense would have constituted first degree murder; or

USSG §2A2.1(a)(1).

First degree murder is defined as conduct which would constitute first degree murder

under 18 U.S.C. § 1111. USSG § 2A2.2, application note 1. The statute provides:

> (a) Murder is the unlawful killing of a human being with malice aforethought.
> Every murder perpetrated by poison, lying in wait, or any other kind of willful,
> deliberate, malicious, and premeditated killing; or committed in the perpetration
> of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason,
> espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse,
> burglary, or robbery; or perpetrated as part of a pattern or practice of assault or
> torture against a child or children; or perpetrated from a premeditated design
> unlawfully and maliciously to effect the death of any human being other than him
> who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

18 U.S.C. § 1111.

Here the particular facts of the case do not support a finding that the object of the offense

was first degree murder. Mr. Patton did not fire his weapon until after the vehicle he was riding

in was hit by gunfire. Significantly there is no evidence that he fired until almost a block away

from both Mr. Nelson's car and the other shooter. The particular facts do not show that the act

was premeditated or deliberated, but rather happened in response to being shot at.  For these

reasons, the appropriate base offense level is 27.

*C. Determination of Sentence.* In deciding "whether to impose a term of imprisonment,"

the Court must "consider the factors set forth in § 3553(a) to the extent that they are applicable"

to determine is what sentence "will be sufficient, but not greater than necessary, to comply with

the purposes set forth" in Section 3553. 18 U.S.C. § 3553(a). Defendant's position is that a sentence of 144 months is appropriate in this case.

   *i. the nature and circumstances of the offense and the history and characteristics of the defendant*. As noted in the objections to the report, the Court is in the best position to determine the facts of the offense as the case did proceed to trial. The evidence shows that Mr. Patton was involved in one incident which was charged in this case. In that incident he was a passenger in a car that followed another. The undisputed evidence is that he did not act until he was shot at and his friend had suffered a grievous injury. He admitted to this conduct that evening.

   He plead guilty in Iowa District Court to charges related to this incident as well as one on April 13, 2020. As a result he was sentenced to twenty years in prison in Iowa. He previously plead guilty to the felon in possession of a firearm charge in this case.

   Mr. Patton is 24 years old. His father was not a part of his life growing up. His maternal great grandmother was his "best friend" as a child. Her death when he was age ten was traumatic and he spent more time indoors afterwards. He was recruited into a street gang in the eighth grade.  He did play football until the tenth grade and basketball up to the eleventh grade.

   Since at least 2017 he has a documented history of anxiety. In 2019 he reported to Broadlawns Medical Center with suicidal thoughts. He reported that depression had "snuck up" on him. During the assessment at that time, he disclosed that he had auditory hallucinations. While in the Polk County Jail he has been diagnosed with generalized anxiety disorder and other schizoaffective disorders.

   As reflected in the letters of support filed with this memorandum, Mr. Patton does have the support of friends and family. He was an active part of his child's life prior to his

incarceration. He believes that he can be a contributing member of the community by focusing on being a father to his children, maintaining employment and avoiding people who would be bad influences.

As Mr. Crisp said during the State sentencing hearing, Mr. Patton is articulate, sociable and can be a good young man. The task is to get him to be that person all the time. While he has significant criminal history for his age, there is much that can be salvaged here. The letters of support show that his friends and family believe in him. He can be at the point where is a benefit to the community.

*ii. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.* There is a long mandatory prison sentence which must be imposed. Any sentence will necessarily reflect the seriousness of the offense and provide adequate deterrence.

In the current pandemic, Mr. Patton will face severe challenges in obtaining training and treatment within the Bureau of Prisons. His conditions of confinement will also be significantly different. Since March 13, 2020, BOP modified its operations to respond to the spread of COVID-19. This has included limiting movement of inmates, who are secured in their assigned cells/quarters to decrease the spread of the virus. Family and friends have been prohibited from visiting. Programming, absent select UNICOR operations, has mostly ceased and movement throughout the facilities is suspended or severely limited. The Bureau has indicted that

programming is offered, "to the extent practicable." In practice, this has mean that programming

has been deferred or halted. Don Hummer (2020): *United States Bureau of Prisons' Response to

the COVID-19 Pandemic*, Victims & Offenders, page 8.[3]  Two facilities currently are operating

currently under "minimal modifications," 25 under "moderate modification" and 70 under

"intense modifications" due to the pandemic response.[4]

It is clear that Mr. Patton's conditions of confinement have been, and will continue to be,

much harsher because of the current situation.

*iii. the kinds of sentences available*. The sentencing ranges and mandatory minimum

sentence has been previously discussed.

*iv. the kinds of sentence and the sentencing range established the applicable category of

offense committed by the applicable category of defendant as set forth in the guidelines*. The

guidelines provide for only one kind of sentence in this matter – imprisonment. The guideline

issues have been previously discussed. Whether the guideline range found by the Court after

review of all of the facts of this case are "sufficient but not greater than necessary" is the ultimate

issue in this case.

*v. any pertinent policy statement issued by the Sentencing Commission*. There is a

downward departure which can be applied for victim conduct. The guidelines provide:

§ 5K2.10. Victim's Conduct (Policy Statement)

If the victim's wrongful conduct contributed significantly to provoking the offense
behavior, the court may reduce the sentence below the guideline range to reflect

---

[3]The article can be found at:
https://www.tandfonline.com/action/showCitFormats?doi=10.1080/15564886.2020.1829765

[4]See, https://www.bop.gov/coronavirus/

the nature and circumstances of the offense. In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following:

(1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.

(2) The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.

(3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.

(4) The danger actually presented to the defendant by the victim.

(5) Any other relevant conduct by the victim that substantially contributed to the danger presented.

(6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

Victim misconduct ordinarily would not be sufficient to warrant application of this provision in the context of offenses under Chapter Two, Part A, Subpart 3 (Criminal Sexual Abuse). In addition, this provision usually would not be relevant in the context of non-violent offenses. There may, however, be unusual circumstances in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violent offense. For example, an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation.

USSG § 5K2.10.

The departure "is warranted when the victim's behavior significantly contributed to provoking the behavior of the offense." *Blankenship v. United States*, 159 F.3d 336, 339 (8th Cir. 1998). The guideline "manifests a concern for proportionality in the defendant's response." *Id.* In this case the evidence is clear that Mr. Patton's act of shooting did not occur until after he was fired upon. Significantly, there is not evidence in the record that he did anything to inflict harm by firing his weapon until that point. This is a situation were the departure is shown by the

14

evidence and should be substantial.

> *vi. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.* Whatever the Court decides is the appropriate sentence, there will be disparities from how Mr. Patton is treated from the vast majority of others similarly situated. If for no other reason, a vanishingly small proportion of this type of offender end up charged with a Federal crime. The attempted murder guideline was used as the primary guideline in a total of 115 cases in fiscal year 2021.[5] This low number is relatively consistent over the past several years.[6] Also consistent is that approximately forty percent of the time courts vary from the recommended guideline range. *Id.*

The second issue which will differentiate Mr. Patton from others is the fact that he chose to exercise his right to trial.  That make him part of a small minority of defendants. Jury trials are now less than three percent of the cases in state and federal courts. *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It,* National Association of Criminal Defense Lawyers (2018).[7] Since 2016, criminal trials have declined twenty four percent in the federal system. Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2020 Annual Report of the Director. In 2018 criminal filings had increased 13 percent but the number of jury trials rose only 4 percent. Administrative

---

[5] 2021 Annual Report and Sourcebook of Federal Sentencing Statistics, Table 20, page 70.

[6] Review of the past sourcebooks finds that there were 126 cases in 2020; 169 in 2019; 112 in 2018; and 130 in 2017. The sourcebooks can be downloaded at https://www.ussc.gov/research/sourcebook/archive.

[7] The full report can be found at: https://www.nacdl.org/Document/TrialPenaltySixthAmendmentRighttoTrialNearExtinct

Office of the United States Courts, Judicial Business of the United States Courts: 2018 Annual

Report of the Director.[8] In 2019 there was a 6 percent increase in criminal filings with a four

percent increase in jury trials. Administrative Office of the United States Courts, Judicial

Business of the United States Courts: 2019 Annual Report of the Director.[9] By contrast, fifteen

percent of federal cases went to trial in 1970. Hindelang, Criminal Justice Research Ctr., Univ. at

Albany, *Sourcebook of Criminal Justice Statistics Online,* tbl.5.22.2010 (Kathleen Maguire

ed.).[10]

     One reason that is commonly given for the decrease in jury trials is the increase in

sentence which occurs if unsuccessful compared to a plea of guilt.  This is in part a structural

problem of criminal statutes, as Justice Kennedy noted:

> The reality is that plea bargains have become so central to the administration of
> the criminal justice system that defense counsel have responsibilities in the plea
> bargain process, responsibilities that must be met to render the adequate assistance
> of counsel that the Sixth Amendment requires in the criminal process at critical
> stages. Because ours 'is for the most part a system of pleas, not a system of trials,'
> [citation omitted], it is insufficient simply to point to the guarantee of a fair trial
> as a backstop that inoculates any errors in the pretrial process. 'To a large extent .
> . . horse trading [between prosecutor and defense counsel] determines who goes to
> jail and for how long. That is what plea bargaining is. It is not some adjunct to the
> criminal justice system; it is the criminal justice system.' Scott & Stuntz, Plea
> Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992). See also Barkow,
> Separation of Powers and the Criminal Law, 58 Stan. L. Rev. 989, 1034 (2006)
> ('[*Defendants] who do take their case to trial and lose receive longer sentences
> than even Congress or the prosecutor might think appropriate, because the longer*

---

[8]The report can be found at:
https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2018

[9]The report can be found at:
https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2019

[10]The table can be found at:  available at
http://www.albany.edu/sourcebook/pdf/t5222010.pdf

*sentences exist on the books largely for bargaining purposes.* This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial' (footnote omitted)). In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

*Missouri v. Frye*, 566 U.S. 134, 143-44 (2012)(emphasis added).

In the current guidelines system, the reduction in offense levels for acceptance of responsibility has become an institutional decrease for the decision to plead guilty rather than go to trial. The original guideline provided:

§ 3E1.1. Acceptance of Responsibility

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section *without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury* or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

USSG § 3E1.1 (1987)(emphasis added).

The commentary at the time made clear that this was not a reduction to be given simply for not going to trial:

2. *Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial*. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

3. A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced

17

sentence under this section.

*Id.*, comment, (n. 2, 3)(emphasis added).

The commission changed the commentary with amendment 351, deleting the original with the

following:

> 2. *This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.* Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.
>
> 3. *Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section.* However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

USSG, App. C, amendment 351 (1990)(emphasis added).

The amendment also importantly took away another important consideration. The

background note originally said:

> The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, one or more of the actions listed above (or some equivalent action) is appropriately given a lesser sentence than a defendant *who has not demonstrated sincere remorse.*
>
> The availability of a reduction under § 3E1.1 is not controlled by whether the conviction was by trial or plea of guilty. Although a guilty plea may show some evidence of acceptance of responsibility, it does not automatically entitle the

defendant to a sentencing adjustment.

USSG § 3E1.1, comment (backg'd) (1987).

After the amendment, contrition and remorse were no longer considerations. The second

paragraph was also deleted in full, so that the availability began to be controlled by whether there

was a trial or plea. The background comment now begins:

> The reduction of offense level provided by this section recognizes legitimate
> societal interests. For several reasons, a defendant who clearly demonstrates
> acceptance of responsibility for his offense by taking, in a timely fashion, the
> actions listed above (or some equivalent action) is appropriately given a lower
> offense level than a defendant who has not demonstrated acceptance of
> responsibility.

USSG § 3E1.1, comment (backg'd) (2021).

In 1992 the Commission allowed for a third point for acceptance, but deleted the portion

of the guideline that a defendant may be given consideration "without regard to whether his

conviction was based upon a guilty plea or a finding of guilt" and changing the language to:

> (b) If the defendant qualifies for a decrease under subsection (a), the offense level
> determined prior to the operation of subsection (a) is level 16 or greater, and the
> defendant has assisted authorities in the investigation or prosecution of his own
> misconduct by taking one or more of the following steps:
>
>> (1) *timely providing complete information to the government
>> concerning his own involvement in the offense*; or
>>
>> (2) *timely notifying authorities of his intention to enter a plea of
>> guilty, thereby permitting the government to avoid preparing for
>> trial and permitting the court to allocate its resources efficiently,
>> decrease the offense level by 1 additional level.*

USSG, App. C, amendment 459 (1992)(emphasis added).

By 2003 the guidelines limited the third point to cases where the Government filed a

motion as they were "in the best position to determine whether the defendant has assisted

authorities in a manner that avoids preparing for trial." USSG, App. C, amendment 649.

The amendment was added as required by language in the Feeney Amendment to the

Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT)

Act. Pub. L. No. 108-21, 117 Stat. 650 (2003).

> The objective of the Amendment is to reduce the role of the judiciary in
> formulating sentencing policy, in large part through further curtailing judicial
> discretion at sentencing. Though the Amendment achieves this goal primarily by
> diminishing judicial discretion to depart from the Guidelines range at sentencing,
> the Amendment's provisions viewed as a whole evidence a distrust of the federal
> trial bench. While the SRA viewed the judiciary as a cooperating participant in the
> evolution of federal sentencing law, the Feeney Amendment regards the trial
> bench as an enemy who must be carefully monitored to ensure compliance with
> the Guidelines.

O. D. Sanderford, *The Feeney Amendment, United States v. Booker, and New Opportunities for

the Courts and Congress*, 83 N.C. L. Rev. 736, 738 (2005). This Circuit has recognized that as

the PROTECT Act does not purport to limit a trial court's discretion under the sentencing statute

and that later Supreme Court decisions have made clear that the amendment does not limit a

Court in deciding the ultimate sentence.  *United States v. Jimenez-Perez*, 659 F.3d 704, 710-11

(8th Cir. 2011). However, this portion of the amendment remains and has both limited the full

extent of a reduction for acceptance to that requested by the Government and eroded the thought

that anything other than not going to trial should be considered for this type of reduction.

The history of the acceptance guideline has turned from any initial thought that remorse

and contrition should be a consideration or that it should be considered without regard to how

guilt was decided. It has become an institution penalty for essentially everyone who wishes to

exercise the right to a jury trial.

Mr. Patton's situation demonstrates the harm of this situation. He did in fact enter a guilty

plea in state court to charges related to this event, as well as the prior shooting. At sentencing he did express remorse and the desire to make amends through bettering himself and showing that he could make changes and be a positive influence in this community. But because he contested *some*, but not all, of the Federal charges filed and actually had the Government prepare and go to trial – which is, of course, their job – he is automatically facing more time in prison.

The point of the sentencing statute is to punish someone enough and no more for a crime. The baseline of what we do in sentencing has become the overwhelming amount of people who plead guilty. There is institutional favor given to reward those who plead guilty and allow for lesser sentences when certain guidelines are not aggressively pursued. None of that applies for those who want the right so fundamental that the Founders included it in two of the first ten amendments to the constitution, a jury trial.

Here Mr. Patton had a trial with legitimate issues for a jury to decide. The Government pursued this matter after apparently deciding that a state court judge issuing a twenty year prison sentence to both protect the community, punish Mr. Patton and promote rehabilitation rather than retribution was anathema to the national interest. Because of that decision his hope of proving himself and building a better future is delayed for years. But there is still hope for him. He is still young and has a future waiting for him.

The third issue which makes Mr. Patton different from others is the undischarged twenty year sentence in Iowa, which is the relevant conduct in this case. The general rule is:

§ 5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after

sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

(d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

USSG § 5G1.3.

Here, the presentence report finds that the undischarged state sentence includes both relevant and non relevant conduct. PSIR ¶ 103. However, at trial both incidents were part of the evidence in this case. It is hard to imagine that the incidents were relevant evidence at trial, but not relevant conduct. USSG § 3G1.3(1) and (2) are applicable.

Obviously, the § 924(c) count must be run consecutive to any other sentence. But the conviction for the VICAR offense does not. He should be given credit for the time between May

10, 2020 and May 28, 2021 that he was in state custody. The sentence imposed beyond 120 months should be concurrent to the undischarged state sentence.

Given all of the circumstances in this case, the guideline range does not meet the statute's requirement. A sentence that is sufficient but not greater than necessary is one of twelve years.

*vii. the need to provide restitution to any victims of the offense.* Defendant is not aware of any claim of restitution which has been made in this case.

## V. CONCLUSION

The factors to be considered, the facts of this unique case show that a sentence of 144 months is sufficient, but not greater than necessary, to meet the requirements of the statute and impose a just sentence.

Respectfully Submitted,

J. KEITH RIGG
317 Sixth Avenue, Suite 1300
Des Moines, Iowa 50309
Telephone: (515) 284-7930
Email: jkrigg@dwx.com
ATTORNEY FOR DEFENDANT

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record at their respective addresses disclosed on the pleadings on August 12, 2022 through electronic service via CM/ECF.

Signature:_____